**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Richard Stadmire, | : | Case No. 1:09 CV 0669 |
| Petitioner, | : | |
| v. | : | **MAGISTRATE'S REPORT AND RECOMMENDATION** |
| Robert Welch, Warden, | : | |
| Respondent. | : | |

This case, filed pursuant to 28 U.S.C. § 2254,[1] was referred to the undersigned Magistrate pursuant to Local Rule 72.2.[2] Pending is Petitioner's Petition for Writ of Habeas Corpus (Docket No. 1), to which Respondent filed a Return of Writ (Docket No. 6) and Petitioner filed a Traverse/Response (Docket No. 9). For the reasons that follow, the Magistrate recommends that the Court deny the Petition for Writ of Habeas Corpus.

---

[1]

The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C.A. § 2254 (Thomson/West 2007).

[2]

The Clerk shall refer all *pro se* petitions for habeas corpus filed under 28 U.S.C. § 2254, provided such petition has first been reviewed by the Court pursuant to 28 U.S.C. § 1915(d) and Rule 4 of the Rules Governing § 2254 Cases and a decision has been made to require a response to the petition, to a Magistrate Judge for a Report and Recommendation as provided in Local Rule 72.1, *Duties of United States Magistrate Judges*.

## **I.  FACTUAL BACKGROUND**

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-143, 110 Stat. 1214 (April 24, 1996), the factual findings made by a state court in the direct appeal are presumed to be correct in a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to a judgment in state court. *Keith v. Mitchell*, 455 F. 3d 662, 666 (6th Cir. 2006) (*citing* 28 U. S. C. § 2254 (e) (1) (2006)).

In the case of *State of Ohio v. Richard Stadmire*, 2007 WL 2051992, * 1 (2007), the state presented the following facts at trial.

On the evening of April 28, 2001, Lisa Bower, the victim, arrived home around 11:00 p.m. and entered her apartment via the side door. She walked down a few steps into her kitchen, turned on the lights, and placed some bags on the kitchen table. She heard some voices, which was not unusual, and traversed back up the steps to lock the deadbolt on the door she had recently entered. Upon reaching the top of the steps, a male put a gun to her neck, led her back down the steps, and into her apartment. A second male followed them.

The male with the gun forced her into the kitchen, against a wall, and struck her in the head with the gun. He then ordered her onto the floor, while the other male searched her house for items to steal. While the victim was on the floor, the man with the gun ordered her to remove her pants and underpants. As he assisted her in doing so, the victim saw the face of her assailant. When her pants were off, he pulled her shirt up over her face, also covered her face with a towel, and ordered her to remain still. Pointing the gun to her head, the other male, who had previously pillaged the home, digitally penetrated the victim and then proceeded to force sexual intercourse upon her. When he finished ejaculating inside her, the other assailant with the gun, forced sexual intercourse upon her but did not ejaculate.

The males then exited the apartment, taking the victim's purse, which contained about $30.00, a jar of coins and a cell phone. The victim, left on the kitchen floor, got up shortly thereafter, covered herself in a coat, and went to a neighbor's apartment. She asked them to call the police. "Appellant" also telephoned her aunt and told her of the rapes. Shortly thereafter, the police arrived. After briefly speaking with the victim, the police transported her to the hospital where a rape examination was conducted, a rape kit retrieved, and she was treated for her injuries, which included bruising to her head. Additionally, the police confiscated the victim's coat for examination. During their investigation, the detectives learned that Christopher Miller used the victim's stolen cell phone the morning after the rape. Accordingly, the detectives showed the victim a picture of Miller, whom she identified as the man with the gun and the second man to rape her. Consequently, the detectives arrested Miller. They extracted DNA from Miller while he was under arrest. The DNA was compared to a vaginal swab and cotton ball from the rape kit, as well as semen found on the coat retrieved from the victim. The DNA examination, however, revealed that the semen found did not belong to Miller but to another individual. The police ran the DNA from the semen through a national databank in 2001 but were unsuccessful in identifying the second assailant. It was not until August of 2004 when members of the Ohio Bureau of Criminal Identification notified the police of a DNA match for the semen to Richard Stadmire, the Petitioner.

Based upon this information, Detective Mark Schmitt obtained a search warrant for Petitioner's DNA. As suspected, the appellant's DNA matched that of the DNA obtained from the victim's rape examination and coat. Additionally, the state presented the testimony of Charles Boyd at trial. He testified that he stood as a look-out for Petitioner and Miller while they raped the victim and pillaged her home. He explained that he entered the apartment after the rapes and noticed the victim on the floor with a towel over her head. Boyd denied knowing Miller prior to April 28, 2001, but admitted to previously being arrested

with Petitioner on other theft charges.  Finally, Boyd admitted that he testified as a result of a plea bargain reached with the state for a more lenient sentence for his involvement in this incident.

1.  **II.  PROCEDURAL BACKGROUND**

*The Indictment*

During the January 2005 term, the Cuyahoga County, Ohio, grand jury returned the following four-count indictment against Petitioner:

Count One:      Rape, a violation of OHIO REV. CODE § 2907.02, with a sexually violent predator specification as defined in OHIO REV. CODE § 2971.01(I) and a firearm specification in violation of OHIO REV. CODE § 2941.145.

Count Two:      Rape with a sexually violent predator specification and a firearm specification.

Count Three:    Aggravated robbery, a violation of OHIO REV. CODE § 2911.01 with a firearm specification;

Count Four:     Kidnaping, a violation of OHIO REV. CODE § 2905.01.

(Docket No. 6, Exhibit 1).

*The Jury Trial.*

By stipulation of the parties, the sexually violent predator specifications were bifurcated from counts one, two and four (Docket No. 6, Exhibit 3).  On June 12, 2006, a jury found Petitioner guilty as charged in all four counts of the indictment (Docket No. 6, Exhibit 2).  The trial court dismissed the sexually violent predator specification alleged in three counts.

*The Sentencing Hearing.*

On August 21, 2006, Judge Judith Kilbane-Koch sentenced Petitioner to the Lorain Correctional Institution for a period of 43 years, the term of imprisonment included three years on the merged firearm specifications to be served prior to and consecutively to ten years on each of the base charges of counts one, two, three and four, with all counts to run consecutively to each other.  The sentence was to be served

consecutively to the twenty-five and a half year sentence imposed in the case of *State of Ohio v. Richard Stadmire*, Case No. CR-410305[3] (Docket No. 6, Exhibit 4).

*The Direct Appeal.*

On September 12, 2006, Petitioner perfected an appeal in the Court of Appeals of Cuyahoga County, Eighth Appellate District from the judgment of conviction[4] (Docket No. 6, Exhibit 6). The Court of Appeals affirmed the conviction and sentence on July 30, 2007 (Docket No. 6, Exhibit 9).

---

[3] On March 19, 2002, Petitioner was convicted of one count of aggravated robbery, a violation of OHIO REV. CODE § 2911.01, one count of kidnaping, a violation of OHIO REV. CODE § 2905.01, one count of gross sexual imposition, a violation of OHIO REV. CODE § 2907.05, and one count of misuse of a credit card, a violation of OHIO REV. CODE § 2913.21. Petitioner was sentenced to ten years on the aggravated robbery count, ten years on the kidnaping count, eighteen months on the gross sexual imposition charge and one year on the misuse of credit card charge. Since Petitioner used a firearm, he was sentenced to three years in prison for each violation. Petitioner was deemed a sexually-oriented offender (Docket No. 6, Exhibit 5).

[4] Petitioner presented five assignments of error in the subsequently filed brief. First, there was a lack of sufficient evidence to support a conviction. Second, Petitioner's convictions are against the manifest weight of the evidence. Third, the trial court erred by ordering convictions and consecutive sentences for separate counts of rape and kidnaping since the offenses are allied and part of the same transaction. Fourth, the trial court erred in ordering Petitioner to serve a consecutive sentence. Fifth, the trial court erred in sentencing Petitioner to the maximum sentence.

*The Appeal to the Supreme Court of Ohio*

Petitioner filed a memorandum in support of jurisdiction on September 13, 2007[5] (Docket No. 6, Exhibit 13). On December 26, 2007, Chief Judge Thomas J. Moyer, denied leave to appeal and dismissed the appeal[6] (Docket No. 6, Exhibit 14).

*Post Conviction Relief*

    *a.*    Petitioner filed a motion for reconsideration on November 1, 2007[7] which the Court of appeals denied, without comment (Docket No. 6, Exhibits 10 and 11).

    *b.*    Petitioner filed a motion to vacate or set aside judgment of conviction on September 19, 2008 in the Court of Common Pleas for Cuyahoga County, Ohio[8] (Docket No. 6, Exhibit 15). Judge Kilbane-Koch denied the motion to vacate without comment (Docket No. 6, Exhibit 17).

### III. JURISDICTION

Under 28 U.S.C. § 2254, a federal court can grant a writ of habeas corpus to state prisoners if they are held in custody *pursuant to the judgment* of a state court only on the ground that he or she is in custody

---

[5] Petitioner suggested that where a single restraint of liberty was solely for the purpose of facilitating two other crimes, both of which Petitioner had been separately convicted, then the kidnaping offense allied with those two crimes. Next, Petitioner argued that OHIO REV. CODE § 2929.14(D)(1)(b) required that the sentence of kidnaping run concurrently with the sentence for the other two offenses. Third, Petitioner contends that the trial court erred when it retrospectively applied a revised sentencing statute to events occurring before the revision to the disadvantage of the Petitioner, denying his rights to due process of law and violating the Ex Post Facto Doctrine.

[6] Without comment, Chief Justice Moyer found that there was no substantial constitutional question.

[7] Petitioner requested that his conviction be vacated. In the alternative, he requested the appointment of counsel, an evidentiary hearing and the appointment of an expert. In support of his request, he argued that (1) he was indicted twice for the same offense, (2) the Speedy Trial Act was violated, (3) he was deprived of the effective assistance of counsel, (4) the trial judge should be disqualified for statements made about him and undue delays in disposing of a motion, (5) the prosecutor engaged in misconduct in making personal statements, (6) he was deprived of the right to confront the accusing witnesses, (7) the procedure for identifying him through his DNA was flawed, and (8) he was entitled to change of venue as he was prejudiced by the media coverage.

[8] Petitioner claimed that trial counsel failed to challenge the fatally defective indictment which omits a *mens rea* in each count and the "fatal and unconstitutional" jury instructions.

in violation of the Constitution or laws or treaties of the United States. *Eddleman v. McKee,* 586 F.3d 409, 412 (6th Cir. 2009) (*citing* 28 U.S.C. § 2254(a) (emphasis added)).

Petitioner was sentenced pursuant to the judgment of the Cuyahoga Court of Common Pleas. He is incarcerated at the Toledo Correctional Institution. Petitioner articulated claims that allege a deprivation of rights guaranteed under Ex Post Facto and Due Process Clauses of the United States Constitution.

Since Petitioner has satisfied the requirements of Section 2254(a), this Court is authorized to review his habeas claims.

## IV. HABEAS CORPUS STANDARD

In determining whether to issue a habeas writ, the standards set forth in the AEDPA govern the district court's review of a state court decision. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007). An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Id.* (*citing* 28 U.S.C. § 2254(d)).

A state court decision on the merits is contrary to clearly established Supreme Court precedent only if a rule that contradicts the governing law set forth in Supreme Court cases or if it confronts a set of facts that are materially distinguishable from a decision of the Court and nevertheless arrives at a different result. *Id.* (*citing Mitchell v. Esparaza*, 124 S. Ct. 7, 10 (2003) (per curiam) (*quoting Williams v. Taylor*, 120 S. Ct. 1485, 1519-1520 (2000); *see also Bell v. Cone*, 122 S. Ct. 1843, 1850 (2002)).

"[W]here the state court decides a claim on the merits but does not articulate the reasons for its decision, [a federal habeas court is] 'obligated to conduct an independent review of the record and

7

applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented.'" *Id.* (*quoting Daniels v. Lafler,* 192 Fed. Appx. 408, 419 (6th Cir. 2006) (*quoting Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000) *cert. denied*, 121 S. Ct. 1415 (2001)). "This 'independent review' is 'not a full, *de novo* review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA.'" *Id.* (*citing Harris*, 212 F.3d at 943).

## V. ANALYSIS

### *1. Petitioner's Position*

Petitioner proposes that the severance remedy set fourth in *State v. Foster*, 109 Ohio St.3d 1, 845 N. E. 2d 470 (2006), violated the Ex Post Facto and Due Process Clauses of the United States Constitution. When the *Foster* court declared OHIO REV. CODE §§ 2929.14(B), 2929.14(C), and 2929.14(E)(4) unconstitutional, the change resulted in judicial enlargement of criminal sentencing statutes. Before *Foster*, there were certain prohibitions against non-minimum and consecutive sentences. The retrospective application of *Foster* worked to Petitioner's disadvantage since his sentences were of the non-minimum nature and consecutive. As a result, Petitioner contends that he is serving an unconstitutional sentence.

### *2. Respondent's Position*

Respondent's general contention that the application of *Foster* to Petitioner's sentence did not violate ex post facto or due process principles is supported by five arguments. First, Petitioner faced the same potential punishment both before and after *Foster*. Second, Petitioner had fair warning of the potential punishment at the time he committed his crimes. Third, the state appellate court held that Petitioner's sentences did not violate ex post facto principles and under the AEDPA Standard of Review, a federal habeas court must give deference to the state court's adjudication of a constitutional claim. Fourth, the state appellate

court's opinion was not an unreasonable application of United States Supreme Court precedent. Fifth, prior to *State v. Foster*, Ohio's statutes gave a sentencing court discretion to fashion a sentence that complied with the purposes of Ohio's sentencing scheme but required the court to make certain findings before imposing maximum or consecutive sentences. Sixth, the severance remedy adopted by the Ohio Supreme Court in *State v. Foster* is consistent with the remedy adopted in *United States v. Booker* and with the legislative intent of the General Assembly of Ohio.

### *3. The Ex Post Facto/Due Process Standard*

The Ex Post Facto Clause prohibits **a state from passing a law** that (1) criminalizes an action done before the law was passed, which was innocent when done, (2) " 'aggravates a crime, or makes it greater than it was, when committed,'" (3) " 'changes the punishment'" to inflict greater punishment than the law provided when the crime was committed, or (4) " 'alters the legal rules of evidence'" so that less or different testimony is required than at the time the offense was committed. *Hooks v. Sheets,* 2010 WL 1655578, *3 (6th Cir. 2010) (*citing Rogers v. Tennessee,* 121 S. Ct. 1693, 1697 (2001) (*quoting Calder v. Bull,* 1798 WL 587, *3 (1798)).

The Ex Post Facto Clause, however, provides by its terms that it is applicable only to acts of the legislature, and " 'does not of its own force apply to the Judicial Branch of government.' " *Id.* (*citing Rogers,* 121 S. Ct. at 1697) (*quoting Marks v. United States,* 97 S. Ct. 998, 992 (1977)). Nevertheless, the "limitations on ex post facto judicial decisionmaking are inherent in the notion of due process." *Id.* (*citing Rogers,* 121 S. Ct. at 1697). Consequently, the principles of the Ex Post Facto Clause apply to the courts through the Due Process Clause. *Id.* (*see Rogers*, 121 S. Ct. at 1697). Because these principles are viewed through the lens of due process in the judicial context, the constitutionality of judicial action turns on the traditional due process principles of "notice, foreseeability, and, in particular, the right to fair warning," rather than the specific prescriptions of the Ex Post Facto Clause. *Id.* (*citing Rogers*, 121 S Ct. at 1698).

A state's statutory scheme does not violate the Sixth Amendment simply because it constrains the ability of courts to impose consecutive sentences to situations in which the court has found specific facts. *Id.* at *4 (*citing Oregon v. Ice,* 129 S.Ct. 711, 714-15 (2009)). Instead, a state may allow courts unfettered discretion to impose consecutive sentences or it may limit that authority without violating the Sixth Amendment. *Id.*

### *4. Application to Petitioner's Allegations*

At the time Petitioner committed his crimes, Ohio permitted the sentencing court to impose consecutive sentences rather than concurrent sentences if it found particular facts and explained its reasoning for the imposition of a consecutive sentence. OHIO REV. CODE § § 2929.14(E)(4), 2929.19(B)(2)(c). By the time Petitioner was sentenced, the Ohio Supreme Court had determined that these statutory provisions violated *Blakely* because they allowed the imposition of longer sentences-consecutive sentences-based upon judicial factfinding. *See Foster,* 109 Ohio St. 3d at 21; 845 N.E.2d at 491. However, the Magistrate finds that the sentencing code provisions at the time Petitioner committed the offenses were the same as when he was sentenced. *See* OHIO REV. CODE § 2929.14 (A)(1) (Thomson Reuters 2001, 2006). The findings in *Foster* neither serve to aggravate the crimes after they were committed, enhance the punishment, nor alter the legal rules of evidence. Petitioner was always subject to consecutive sentences at the discretion of the court. Moreover, Petitioner was aware of the potential for consecutive sentences. He had already been subjected to consecutive sentences in a pending case. Petitioner had been brought before the court to hear an explanation of the purposes and principles of sentencing (Docket No. 6, Exhibit 5).

Since Petitioner was already subject to consecutive sentences within the discretion of the court, his sentencing on subsequent charges does not raise legally cognizable ex post facto or due process issues. This sole issue raised in Petitioner's Writ of Habeas Corpus lacks merit.

## **VI.  CONCLUSION**

For these reasons, the Magistrate recommends that the Court deny the Petition for Writ of Habeas Corpus and terminate the referral to the Magistrate.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Dated: June 21, 2010

## **VII.  NOTICE**

Please take notice that as of this date the Magistrate's report and recommendation attached hereto has been filed.  Pursuant to Rule 72.3(b) of the LOCAL RULES FOR NORTHERN DISTRICT OF OHIO, as amended on December 1, 2009, any party may object to the report and recommendations within fourteen (14) days after being served with a copy thereof.  Failure to file a timely objection within the fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.  The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  Any party may respond to another party's objections within fourteen days after being served with a copy thereof.

Please note that the Sixth Circuit Court of Appeals determined in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals.  In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.